IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

SHIRLEY GARNER and
MAXIE KEY                                                              PLAINTIFFS

v.                            No. 2:20-cv-50-DPM

VIRGIL GREEN, Individually and in his
Official Capacity as Chief of Police for the
City of Helena-West Helena, Arkansas;
CYNTHIA GAMBLE, Individually and in her
Official Capacity as a Police Officer for the
City of Helena-West Helena, Arkansas;
CARL VANN, in his Official Capacity as a
Police Officer for the City of Helena-West
Helena, Arkansas; and MICHAEL THOMAS,
in his Official Capacity as a Police Officer for
the City of Helena-West Helena, Arkansas       DEFENDANTS

## ORDER

**1.** Shirley Garner and her mother, Maxie Key, press many claims under 42 U.S.C. § 1983, the Arkansas Civil Rights Act, and Arkansas tort law. See Appendix A for particulars. The claims are based on three separate incidents:

    **a.** The Helena-West Helena city council voted to remove Garner from her unpaid position as chair of the city's civil service commission because she refused to release police promotion exams in advance of the examination to the city council and former chief of police Virgil Green.

    **b.** Chief Green obtained a warrant for Garner's arrest based on two Facebook posts that he wrongly assumed she

had made on her Facebook timeline about his and his son's criminal histories.

c. Officer Cynthia Gamble, Captain Carl Vann, and Officer Michael Thomas participated in the investigation of a dispute that took place near Key's house involving Garner's son, her sister, and a gun. Garner intervened at the scene twice and recorded parts of the encounter. Warrants issued two days later for a search of Key's house and for Garner's arrest for obstructing the investigation. Captain Vann and Officer Thomas searched Key's house. They seized Garner's pink handgun during that search, and it hasn't been returned to her. Officer Gamble simultaneously arrested Garner at a different location.

Garner and Key say these incidents, viewed as a whole, demonstrate a focused campaign by Chief Green to retaliate against and to humiliate them and their family. Chief Green requests summary judgment, as do the city and Gamble. Garner and Key seek a trial. Many of the material facts are undisputed. Where some genuine dispute exists, the Court takes the record in Garner's and Key's favor. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019).

2. Garner claims her removal from the city's civil service commission violated the First Amendment and her due process rights under the Fourteenth Amendment. Cities in Arkansas are not required to have a civil service system, ARK. CODE ANN. § 14-51-102, but, if one is in place, it must conform to the standards set out in ARK. CODE ANN. §§ 14-51-201 through 14-51-212. Helena-West Helena had a civil

service commission. The city council appointed Garner to the commission in January 2014 and voted to remove her in August 2015. The earliest Garner's term could have ended was the first Monday in April 2016. ARK. CODE ANN. § 14-51-201(b)(1). The city council's stated reason—that Garner's term had expired—was untrue. Her removal was improper.

***First Amendment Retaliation.*** A solid retaliation claim in this context requires Garner to show that she engaged in activity protected by the First Amendment. *Ackerman v. State of Iowa*, 19 F.4th 1045, 1058 (8th Cir. 2021). Sometime in late 2014 or early 2015, John Huff (a city council member) and Sandy Ramsey (the city clerk) asked Garner for a copy of the civil service exam. Garner refused, saying it was illegal for her to distribute copies of the exam before the exam date. A few months later, in July 2015, Green joined the city's police department as its chief. Chief Green, through Huff and the city council, also asked for an advance copy of the civil service exam. Garner again refused to release it. With Huff's help, Chief Green then began pushing for Garner's removal from the commission. The city council voted unanimously to remove her in August.

Garner's effort to uphold the integrity of the civil service exam was laudable. But her speech in that effort was not protected because she didn't speak as a citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). As Helena-West Helena's decision-making authority, the city

council sought to exercise its control over the commission it had created. And Garner's refusal to release the exam was speech that owed its existence to her professional responsibilities as chair of that commission. *Ibid.* Garner commendably did what she thought was right and required by her office. But the impropriety of her removal doesn't offend the First Amendment.

***Due Process.*** A key ingredient is missing from Garner's due process claim as well: a constitutionally protected liberty or property interest. *Kroupa v. Nielson*, 731 F.3d 813, 818–19 (8th Cir. 2013). Garner likens her removal to a loss of public employment. Arkansas law authorized the city council to remove Garner from the commission only for cause. ARK. CODE ANN. § 14-51-210(a). In the ordinary case, a plaintiff can show a protected property interest if state law imposes a for-cause standard as a condition for her firing. *Preston v. City of Pleasant Hill*, 642 F.3d 646, 651 (8th Cir. 2011). To receive constitutional protection, however, the property interest must be more than *de minimis*. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir 1993); *Auchinleck v. Town of LaGrange*, 30 Fed. Appx. 640, 642 (7th Cir. 2002) (unpublished *per curiam*). Garner received no pay and no benefits for her role on the commission. Her property interest in continued service on the commission is therefore not constitutionally protected. And the city council's reason for removing Garner didn't involve allegations of "dishonesty, immorality, criminality, racism, and

the like," so she has also failed to establish a constitutionally recognized liberty interest. *Mercer v. City of Cedar Rapids*, 308 F.3d 840, 845 (8th Cir. 2008).

Even if Garner's interests warranted protection, she received due process in her successful post-deprivation appeal to the mayor. *Clark v. Kansas City School District*, 375 F.3d 698, 702 (8th Cir. 2004). The city council's actions had no basis in Arkansas law; Garner's removal was unauthorized and random. *Ibid.* The mayor found the removal improper and sought Garner's reinstatement. It's unclear whether Garner appealed formally—as a matter of some legal right—or informally. But the parties agree that the mayor had the authority and intention to reinstate Garner to her position as chair of the commission. Before he could do so, however, the city council abolished the commission. This abolition complied with Arkansas law. *City of Pine Bluff v. Southern States Police Benevolent Ass'n*, 373 Ark. 573, 578, 285 S.W.3d 217, 221 (2008). Garner's post-deprivation remedy proved unsuccessful because her reinstatement was impossible, not because the process itself was inadequate or unavailable.

3. Garner next presses First Amendment retaliation claims based on a restraining order entered against her in early 2016. These claims also fail because she didn't engage in protected activity. Reacting to two Facebook posts that appeared on Garner's Facebook timeline about his and his son's criminal histories, Chief Green sought

and received a warrant for Garner's arrest. Garner says she didn't make the posts. She believes that her sister-in-law did. Garner was never arrested. Instead, after the judge issued the arrest warrant, a Helena-West Helena police officer served a no-contact order on Garner at her house. The order banned Garner from contacting or harassing Chief Green.

Garner did not engage in any protected activity. She acknowledges this. She argues that the Supreme Court's decision in *Heffernan v. City of Paterson*, 578 U.S. 266 (2016) nevertheless applies to save her claims. *Heffernan*, as here, involved a state actor's belief that the plaintiff had engaged in some form of speech. As here, the plaintiff hadn't. And, as here, the state actor took retaliatory action against the plaintiff because of the mistaken belief. The Supreme Court allowed Heffernan's claim to go forward, focusing on the government's motivation instead of Heffernan's actions. While the factual similarities are strong, the Court concludes as a matter of law that *Heffernan's* reach does not extend beyond its narrow context: public employment/political activity cases. *Heffernan's* application to the broader spectrum of First Amendment retaliation doctrine is, as best this Court can tell, uncharted in this or any circuit. And the targeted language of *Heffernan's* central holding—employer, employee, political activity—counsels against extension. 578 U.S. at 273. Garner's claim

fails because she did not engage in any activity that the First Amendment protects. *In re Kemp*, 894 F.3d 900, 906 (8th Cir. 2018).

4. In August 2016, some members of Garner's family were involved in a domestic dispute on the street where Key lived. Garner's son, sister, and nephew each had a role. The dispute escalated into a gun fight. The Helena-West Helena police department received two anonymous calls about the incident. Both Garner's son (Andrew Crawford) and her sister (Delphena Qasim) were reported to be among the shooters. Officer Gamble, Captain Vann, Officer Thomas, and others responded to the calls. Officers arrested Garner's nephew. Someone at the scene called Garner and told her what was happening. She arrived minutes later. As the officers searched for Crawford, Qasim, and the gun, Garner recorded and repeatedly interrupted their investigation. The department's investigation concluded at Key's house when she told officers that Qasim had left the scene. Crawford and Qasim were not apprehended.

*Garner's Arrest.* Two days after the incident near Key's house, Officer Gamble executed two warrants and arrested Garner for hindering apprehension of another and obstructing governmental operations. Garner claims her arrest violated the First and Fourth Amendments, the ACRA, and Arkansas tort law. Garner's civil rights claims against Chief Green fail because she doesn't allege his personal involvement in her arrest. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009);

*Heartland Academy Community Church v. Waddle*, 595 F.3d 798, 806 (8th Cir. 2010). The deep issue is whether Officer Gamble had arguable probable cause for the arrest and is therefore entitled to qualified immunity. *Quraishi v. St. Charles County*, 986 F.3d 831, 836 (8th Cir. 2021).

Officer Gamble had arguable probable cause to believe Garner hindered the apprehension of Qasim and obstructed the department's investigation. When Garner arrived at the scene, officers were in hot pursuit of Crawford and Qasim. Garner placed herself in the middle of everything and refused to leave when asked. Even considering her explanation that she was taken ill and couldn't obey the officers' commands, her actions could reasonably be interpreted as a purposeful distraction that allowed Qasim to evade custody. ARK. CODE ANN. § 5- 54-105(a)(3).\* She also hindered the ongoing investigation, and, in the circumstances, it was reasonable to believe that she did so

---

\* (a) A person commits an offense under this section if, with purpose to hinder the apprehension, prosecution, conviction, or punishment of another person for an offense, he or she:

> (3) Prevents or obstructs anyone from performing an act which might aid in the discovery, apprehension, or identification of the other person by means of force or intimidation or the threat of force or intimidation, or by means of deception[.]

ARK. CODE ANN. § 5–54–105(a)(3).

knowingly. ARK. CODE ANN. § 5-54-102(a)(1).** Officer Gamble personally witnessed at least some of this. Lieutenant John Bailey Jr., who isn't named as a defendant in this case, recounted these events and signed the affidavit supporting the warrants for Garner's arrest. A Phillips County district judge issued the warrants after a probable cause hearing. *Doc. 36-11*. In the circumstances, and regardless whether there was actual probable cause, it was objectively reasonable for Officer Gamble to believe that Garner had committed a criminal offense. *McCabe v. Parker*, 608 F.3d 1068, 1078-79 (8th Cir. 2010). Arguable probably cause existed.

Garner also presses Fourth Amendment claims for malicious prosecution based on her arrest. The Eighth Circuit has never recognized a stand-alone claim for malicious prosecution under § 1983. *Robinson v. Norling*, 25 F.4th 1061, 1063 (8th Cir. 2022). The Supreme Court, however, recently defined the contours of this kind of claim. *Thompson v. Clark*, 142 S. Ct. 1332, 1337-38 (2022). It is unclear whether arguable probable cause would entitle an officer to qualified immunity on the claim. There is a hint in the cases that it would. *Shimota v.*

---

** (a) A person commits the offense of obstructing governmental operations if the person:

> (1) Knowingly obstructs, impairs, or hinders the performance of any governmental function[.]

ARK. CODE ANN. § 5-54-102(a)(1).

*Wegner*, 759 Fed. Appx. 539, 541 (8th Cir. 2019) (unpublished *per curiam*). If it does, then Officer Gamble is entitled to qualified immunity because she had arguable probable cause to arrest Garner. If it does not, then the Court concludes that Garner's constitutional right against malicious prosecution was not clearly established at the time of her arrest. *Quraishi*, 986 F.3d at 835.

Officer Gamble is entitled to qualified immunity. And Garner's § 1983 claims, and her parallel ACRA claims, therefore fail.

*The Search of Key's Home.* On the same day that Officer Gamble arrested Garner, the Helena-West Helena police department executed a warrant authorizing a search of Key's home for Crawford, Qasim, and a handgun. During the search, the department seized a pink handgun. The officers involved in the search included Captain Vann, Officer Thomas, and others. Key says the search violated her rights under the Fourth Amendment. She challenges the validity of the search warrant and claims that the search resulted in unnecessary and unreasonable damage to her property. Garner says that the pink handgun belonged to her; that she repeatedly asked for it back; that it was never returned; and that it has since been lost. She presses claims under the Fourteenth Amendment and Arkansas law.

First, the warrant to search Key's home was valid. Judge Porter considered Captain Vann's affidavit and issued the warrant. The affidavit included enough information for a reasonable person to

conclude that Crawford, Qasim, or a gun used in a crime — or all three — could be found at Key's house. The warrant particularly described the place to be searched and the persons and things to be seized. That's all the Fourth Amendment requires. *Dalia v. United States*, 441 U.S. 238, 255 (1979); *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998).

Second, Key hasn't offered sufficient proof to support a verdict that any of the named defendants caused unnecessary or unreasonable damage to her property during the search. The record evidence shows general disorder, not, as Key alleges, damage or destruction. Even assuming that some evidence of damage could be presented, the Fourth Amendment's prohibition against property damage is limited because damage is sometimes necessary for an effective search. *Cook v. Gibbons*, 308 Fed. Appx. 24, 28 (8th Cir. 2009) (unpublished *per curiam*). To be unconstitutional, the damage must be unreasonable in the circumstances. *Ibid.* On this record, no reasonable juror could find that Chief Green, Officer Gamble, Captain Vann, or Officer Thomas unreasonably damaged Key's property.

Third, the seizure of Garner's pink handgun was consistent with the search warrant's limits. *Walden*, 156 F.3d at 873. The warrant described a handgun that was allegedly used illegally during the domestic dispute. A reasonable officer could have believed that Garner's handgun was the one to be seized. To the extent Garner presses a Fourth Amendment claim for the seizure of her gun, it fails.

Garner's Fourteenth Amendment claims also fail. Garner asked Chief Green to return her handgun many times after the valid seizure. Chief Green refused to release the gun even after it was made clear to him that it had no use in any ongoing investigations. *Doc. 36-2 at 162.* The gun has never been returned. It has been lost. Losing the gun didn't violate Garner's due process rights; negligence and gross negligence are not actionable under § 1983. *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000). Neither did Chief Green's decision to hold onto the gun during the department's investigation of the domestic dispute. *Rodgers v. Knight*, 781 F.3d 932, 941 (8th Cir. 2015). The gun should have been returned, though, when Garner requested it after the investigation had ended. *Walters v. Wolf*, 660 F.3d 307, 314 (8th Cir. 2011). Garner's informal post-investigation requests to Chief Green and his successor, however, did not satisfy her obligation to seek a post-deprivation administrative remedy under state law. *Crawford v. Van Buren County*, 678 F.3d 666, 670 (8th Cir. 2012). She never sought relief under Rule 15.2 of the Arkansas Rules of Criminal Procedure by petitioning the court that issued the search warrant. There was no due process violation if an adequate and meaningful post-deprivation state law remedy is existed, as it did here. *Mickelson v. County of Ramsey*, 823 F.3d 918, 928–29 (8th Cir. 2016).

5. The remaining claims are all state law matters. Consistent with precedent, the Court declines to exercise supplemental

jurisdiction over those claims. 28 U.S.C. § 1367(c)(3); *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1016–17 (8th Cir. 2015).

\*   \*   \*

The defendants' motions for summary judgment, *Doc. 35 & 38*, are mostly granted and partly denied. All of Garner's and Key's federal and state civil rights claims will be dismissed with prejudice. Garner's state law claims for abuse of process, malicious prosecution, and conversion will be dismissed without prejudice.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

17 June 2022